## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER EARL COTTRELL,** | ) | **Civil Action No. 7:10-cv-00505** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **By: Robert S. Ballou** |
| **JOHN JABE,** *et al.*, | ) | **United States Magistrate Judge** |
| **Defendants.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Christopher E. Cottrell, a Virginia Department of Corrections ("VDOC") inmate proceeding <u>pro se</u>, filed this action pursuant to 42 U.S.C. § 1983, with jurisdiction under 28 U.S.C. § 1343, for damages and injunctive relief. Cottrell sued various officials at Red Onion State Prison ("ROSP") in their individual and official capacities claiming violations of his First, Fourth, Eighth, and Fourteenth Amendment rights. By Order dated October 13, 2011, the court referred all dispositive motions to the undersigned for proposed findings of fact and a recommended disposition of the case, pursuant to 28 U.S.C. § 636(b)(1)(B). The defendants have moved for summary judgment on the basis of sovereign and/or qualified immunity and failure to allege any constitutional violation.

For the reasons set forth below, the undersigned finds that Cottrell's allegations do not establish a constitutional violation and, accordingly, **RECOMMENDS** that the defendants' motions for summary judgment (Dkt. Nos. 39, 51, and 66) be **GRANTED,** Cottrell's request for injunctive relief be **DENIED**, and this action be **DISMISSED**.

## I. Procedural History

Cottrell filed this action on November 10, 2010. (Dkt. No. 1). The defendants filed answers to the Complaint on March 4, 2011, and July 5, 2011. (Dkt. Nos. 30, 61). Defendants

filed Motions for Summary Judgment on April 22, 2011, May 24, 2011, and July 21, 2011 (Dkt. Nos. 39, 51, and 66). Cottrell filed a Motion for Summary Judgment on May 3, 2011. (Dkt. No. 34).

On August 10, 2011, Cottrell filed a motion to withdraw his previous motion for summary judgment. (Dkt. No. 10). The court granted Cottrell's motion to withdraw. (Dkt. No. 74). It is now clear to the court, by Cottrell's continued references to the allegations contained in his motion for summary judgment, that Cottrell's motion for summary judgment was intended to be an amended complaint. In light of Cottrell's apparent intent, and his status as a pro se litigant, Cottrell's motion for summary judgment will be treated as a (non-withdrawn) amended complaint. This matter is now ripe for disposition on Defendants' Motion for Summary Judgment and Cottrell's Motion for Injunctive Relief.

## II.    Plaintiff's Claims

Cottrell, a Virginia Department of Corrections ("VDOC") inmate incarcerated at ROSP, alleges constitutional violations of his First, Fourth, Eighth, and Fourteenth amendments, as well as a § 1983 conspiracy. [1]   These claims arise from a multitude of disparate occurrences, which, for ease of organization, are grouped according to the factual incidents that allegedly gave rise to the specific constitutional claims. For purposes of this opinion, the facts are grouped as follows: Recreational Yard Incident, Administrative Review of Classification Incident, Recreation Denial

---

[1] Defendants are John Jabe, the Deputy Director of the Virginia Department of Corrections; John Garman, the Regional Director of the Virginia Department of Corrections; Tracy Ray, the warden of ROSP; Amy Nixon, Rena Mullins, Fonnie Taylor, and K. Crowder-Austin, ombudsmen or grievance coordinators for the Virginia Department of Corrections; M. Counts, inmate hearing officer at ROSP; Quinn Reynolds, treatment program supervisor at ROSP; S. Mullins, counselor at ROSP; D. Vanover, property officer at ROSP; Sherry Shortridge, operations officer at ROSP; and Elizabeth Rose, J. Artrip, E. Kiser, L. Collins, Tony Adams, L. Fleming, Brown, Phillips, Trent, and Bortz, correctional officers at ROSP. The docket lists both a Major C. Fleming and an L. Fleming as defendants. The complaint and the defendants' motion for summary judgment only refer to an L. Fleming. The defendants also included an affidavit from an L. Fleming (a former major at ROSP). It thus appears that L. Fleming is the only defendant with the last name Fleming, and to the extent that a C. Fleming exists, he or she is not a party to the case.

and Threat Incident, Failed Copying Attempt Incidents, Segregation and Loss of Property Incident, Grievance Mishandling Incident, and Strip Search Incident.

The facts are recited in the light most favorable to Cottrell. See Magill v. Gulf & Western Industries, 736 F.2d 976, 979 (4th Cir. 1984) (stating that on summary judgment, "the court must assess the inferences from not only depositions but also documentary materials in the light most favorable to the party opposing the motion.")(citing United States v. Diebold, 369 U.S. 654, 655 (1962)).

## A. Recreational Yard Incident

On April 29, 2010, two guards escorted Cottrell through the recreation yard in handcuffs. Cottrell verbally objected to being walked through the recreation yard in restraints. At that time, Elizabeth Rose, a Correctional Officer at ROSP, was manning the gun post in the recreation yard. Cottrell alleges that, in response to his verbal objections, Rose threatened to shoot him. Cottrell later saw Rose in the chow hall and informed Rose that he planned to file a grievance against her for her verbal threat.

### 1. Disciplinary Charge

Rose reported Cottrell to Sgt. Collins, claiming that that Cottrell threatened Rose while she was on guard duty in the chow hall. Rose also charged Cottrell with a Disciplinary Offense Code 212 - Threatening Bodily Harm. Lieutenant J. Artrip investigated Cottrell's disciplinary offense and determined that Cottrell was appropriately charged. Cottrell was given a disciplinary offense report, which asked if he planned to request a staff advisor for the disciplinary hearing, present witnesses and/or documentary evidence at the disciplinary hearing, and whether he planned to attend the disciplinary hearing. Cottrell marked each option "yes."

On May 6, 2010, Inmate Hearing Officer M. Counts conducted Cottrell's disciplinary hearing. Counts terminated the hearing when Cottrell became combative and argumentative. At the end of the hearing, Counts found Cottrell guilty of threatening Rose with bodily harm, and gave him a penalty of segregation and 45 days loss of television privileges. Cottrell also alleges that he was moved to a more restrictive Good Conduct Allowance ("GCA") level as a result of this disciplinary charge.

Cottrell appealed the disciplinary hearing decision to Major L. Fleming, who verified that Cottrell received a fair and impartial hearing and affirmed the disciplinary conviction. Cottrell appealed Fleming's decision to Tracy Ray, Warden of ROSP, who upheld Fleming's decision. Cottrell then appealed Ray's decision to John Garman, the Regional Director of VDOC, who also upheld the disciplinary charge.

Based on the facts recited above, Cottrell alleges that Rose issued a false disciplinary offense to suppress and retaliate against Cottrell's effort to file a grievance against Rose. Cottrell claims that each of the officials involved with the disciplinary charge knew that the charge was false, but nevertheless allowed it to proceed. Cottrell further claims that the officers failed to investigate the incident and allowed Rose to rely on "false and illegal" documents at the disciplinary hearing. Cottrell contends that Counts abused his discretion at the hearing by refusing to allow Cottrell to call three witnesses and improperly terminating the hearing. Finally, Cottrell asserts that both Fleming and Ray failed to conduct a proper review of the disciplinary proceeding on appeal. Cottrell alleges that the above facts constitute a violation of his First Amendment rights, and a deprivation of procedural due process. (Compl., Claims 1-6[2]).

---

[2] Cottrell's Complaint contains twenty five subsections, each labeled as a separately numbered "Complaint." To avoid confusion, the court will refer to the individual complaints contained within Cottrell's Complaint as separately numbered "Claims."

4

## 2.  Security Breach Grievance

On May 3, 2010, Cottrell submitted an informal complaint to Major L. Fleming, claiming that escorting Cottrell through the recreation yard in handcuffs constituted a security breach, because Cottrell was unable to defend himself if attacked by other prisoners. Fleming replied to Cottrell's informal complaint, stating that staff could apply handcuffs at any time while escorting a prisoner.  On May 18, 2010, Cottrell submitted a regular grievance, alleging that placing him in handcuffs while escorting him through the recreation yard constituted a breach of security. Cottrell further alleged that Rose threatened to shoot him when he complained about the breach of security.

Warden Ray responded to Cottrell's regular grievance and determined that it was unfounded.  Ray stated that his determination was based, at least in part, on a face-to-face interview with Cottrell conducted by Captain K. McCoy.  Cottrell appealed Ray's denial of his grievance to Regional Director Garman, who affirmed the decision.  Thereafter, Cottrell filed an appeal with Deputy Director John Jabe, but received no written response.

Cottrell now claims that Ray failed to investigate the grievance, and that Ray based his decision on a fictitious "face-to-face" meeting between Cottrell and Captain K. McCoy.  Cottrell also alleges that Garman's affirmation of Ray's decision constitutes a reckless disregard to prisoner safety by failing to implement more stringent procedures for escorting prisoners. Finally, Cottrell alleges that Jabe intentionally "withheld" his appeal.  Cottrell alleges that the above facts constitute a violation of his Eighth Amendment rights, as well as a conspiracy under § 1983. (Compl., Claims 9-11).

### 3. Camera Claim

On May 27, 2010, Cottrell submitted an informal complaint alleging a § 1983 conspiracy by the above-mentioned defendants to deprive him of his rights in retaliation for filing a grievance against Rose. In his informal complaint, Cottrell stated that he asked Correctional Officer Tony Adams to review a recreation yard camera for a breach of security at the time Cottrell was being walked through the yard on April 29, 2010. Adams responded stating that, due to the placement of the camera, Cottrell was not shown on the footage from the yard until he entered the kitchen hallway. Cottrell now alleges that Adams acted as part of the § 1983 conspiracy. (Compl., Claim 15).

### B. Administrative Review of Classification Incident

Prison officials Quinn Reynolds, a treatment program supervisor, and S. Mullins, counselor at ROSP, conducted an Institutional Classification Authority ("ICA") hearing of Cottrell's GCA level after Cottrell's disciplinary conviction for threatening bodily harm to Rose. Reynolds and S. Mullins afforded Cottrell a formal due process hearing, after which they elevated Cottrell to a more restrictive GCA level. At this GCA level, Cottrell earned sentence or good behavior credit at a slower pace.

Cottrell alleges that Reynolds recommended changing Cottrell's GCA level knowing that the underlying charge involving Rose was false. Cottrell also contends that S. Mullins participated in the administrative hearing knowing that the underlying charge was false. Cottrell contends that the Administrative Review of Classification Incident by Reynolds and S. Mullins constitutes a denial of procedural due process. (Compl., Claims 7- 8).

## C. Recreation Denial and Threats Incident

On May 10, 2010, Cottrell filed an informal complaint claiming that Corporal E. Kiser denied Cottrell recreation time and poisoned Cottrell's food in retaliation for grievances that Cottrell previously filed against Kiser. On June 8, 2010, Cottrell filed a regular grievance alleging that Kiser threatened to throw him down a flight of stairs and poison his food. Cottrell further alleged that, although the response to his informal complaint was due on May 25, 2010, Cottrell did not receive a response until June 1, 2010. Cottrell also noted that Sergeant E. Collins restored Cottrell's recreational privileges, but continued to allow Kiser to work near Cottrell while the investigation of Cottrell's other allegations against Kiser was pending.

On July 7, 2010, Warden Ray responded to Cottrell's grievance, and informed Cottrell that an answer to his informal complaint was placed in the institutional mail on May 18, 2010. Ray further determined that the remainder of Cottrell's grievance was unfounded. Cottrell appealed Ray's decision to Regional Director Garman, who upheld Ray's decision on appeal.

Cottrell claims that the Recreation Denial and Threats Incident violated his First and Eighth Amendment rights, deprived him of procedural due process, and constitutes a conspiracy under § 1983. (Compl., Claims 12-13).

## D. Failed Copying Attempt Incident

On May 7, 2010, Cottrell submitted an Inmate Request for Information form, requesting that copies be made on his behalf. On May 11, 2010, S. Mullins, a counselor at ROSP, responded to Cottrell's request, and advised Cottrell that in order to receive copies Cottrell must have adequate funds in his offender account or have documentation from the court requiring the institution to make the copies. On May 11, 2010, Cottrell submitted a second Inmate Request for Information form, contending that he was entitled to the copies under prison operation policies.

On May 13, 2010, S. Mullins again responded to Cottrell's request, informing Cottrell that the copies must either be paid from Cottrell's offender account, or that he must provide documentation from a court requiring the institution to make copies.

Cottrell also alleges that between January 2, 2011 and February 28, 2011, he made ten requests for law library materials. Although the law library materials were provided, Cottrell alleges S. Mullins consistently delayed processing the library requests. Cottrell contends that by denying his copying request and delaying his library material requests, S. Mullins conspired to intentionally deprive him of his constitutional rights under First and Eighth Amendments, and deprived him of procedural due process. (Compl. Claims 14).

On May 27, 2010, Cottrell submitted an informal complaint about the Failed Copying Attempt Incident, alleging that S. Mullins refused to make copies for him, and that an indigent prisoner is entitled to copies. On June 2, 2010, S. Mullins responded to Cottrell's informal complaint, informing Cottrell that copies can only be made if Cottrell has funds in his inmate account, and further, that even if Cottrell was deemed to be indigent, copies would not be provided to him without a court order. Cottrell filed a regular grievance alleging the same facts as the May 27, 2010 informal complaint. This grievance was deemed to be unfounded at both levels of the appeals process. Cottrell alleges that he appealed the grievance to Deputy Director Jabe, but received no written response. Cottrell now alleges that Jabe intentionally failed to respond to Cottrell's grievance, thereby denying him access to the courts. Cottrell also alleges that his grievance was mishandled as part of a conspiracy by defendants under § 1983. (Compl., Claim 25).

### E. Segregation and Loss of Property Incident

### 1. Confiscation of Property

On April 29, 2010, Cottrell was placed in segregation to serve the 45 day sentence from his disciplinary conviction for threatening Rose. On April 29, 2010 and May 15, 2010, D. Vanover, property officer at ROSP, confiscated property from Cottrell, because Cottrell was placed in segregation. On May 17, 2010, Vanover issued a Notification of Confiscation of Property form, notifying Cottrell about the confiscations on April 29 and May 15, 2010.

On July 23, 2010, Cottrell submitted an informal complaint requesting that the confiscated personal property be held at the institution, rather than being discarded. On August 11, 2010, Cottrell submitted a regular grievance alleging that Assistant Warden Rowlette[3] did not respond to his July 23, 2010 informal complaint in a timely manner, and that operating procedures allowed Cottrell to store the confiscated items at the institution when in segregation.

Warden Ray responded to Cottrell's grievance, informing him that Rowlette did not receive Cottrell's July 23, 2010 informal complaint. Ray further responded that Cottrell's informal complaint had not been answered, and that prison staff would attempt to be more prompt in their responses to his informal complaints. Ray otherwise upheld the prison operating procedures with regard to the confiscation of Cottrell's property.

Cottrell appealed Ray's decision to Regional Director Garman, requesting the return of his confiscated property and stating that the policy to confiscate property of prisoners in segregation should be revised. Garman affirmed Ray's conclusion that Cottrell did not receive a response to his informal complaint, and otherwise upheld Ray's decision. Cottrell claims that the Confiscation of Property Incident deprived him of procedural due process. (Compl., Claim 16(1)).

---

[3] Rowlette is not a named defendant.

9

## 2. Confiscation of <u>A Jailhouse Lawyer's Handbook</u>

On August 10, 2010, the <u>A Jailhouse Lawyer's Handbook</u> arrived in the mail for Cottrell from the Center for Constitutional Rights. On August 11, 2010, Cottrell received a Notification of Confiscation of Property stating that the <u>A Jailhouse Lawyer's Handbook</u> is on the Disapproved Publication List, and that Cottrell did not have prior approval to possess it. Cottrell filed a regular grievance, alleging that the publication was improperly ruled as a disapproved publication and was illegally confiscated. Cottrell alleges that the confiscation of <u>A Jailhouse Lawyer's Handbook</u> violated his First Amendment rights, and deprived him of procedural due process. (Compl., Claim 16(2)). However, Cottrell also alleges that he did receive <u>A Jailhouse Lawyer's Handbook</u> at some point, thus, any claim related to his deprivation of this publication is moot.

### F. Grievance Mishandling Incident

The Grievance Mishandling Incident deals primarily with Cottrell's general contention that his informal and regular grievances were systematically mishandled by Amy Nixon, Rena Mullins, Fonnie Taylor, and K. Crowder-Austin, Grievance Coordinators for VDOC, and Sherry Shortridge, Operations Officer at ROSP. Cottrell submitted approximately twelve informal grievances and seventeen regular grievances concerning a variety of issues. Defendants state in their affidavits that each of these grievances was either rejected as improper (and thus reviewable by the institutional ombudsman and the regional ombudsman) or found to be without substantive merit (and thus reviewable up to and beyond the level of the Warden).

Cottrell alleges that Nixon and Shortridge conspired to deny him access to the grievance process. Cottrell alleges that R. Mullins and Crowder-Austin conspired with prison officials to deny grievances that involved alleged criminal activity by prison officials. Cottrell also alleges

10

that R. Mullins, Taylor, Nixon, and Shortridge deliberately misplaced his grievances, thereby subverting Cottrell's attempts to avail himself of the grievance process. Finally, Cottrell alleges that Deputy Director Jabe intentionally failed to respond to Cottrell's grievance for the Failed Copying Attempt Incident, thereby denying him access to the courts. Cottrell alleges that the Grievance Mishandling Incident violated his First Amendment rights, deprived him of procedural due process, and constitutes a § 1983 conspiracy. (Compl., Claims 17-25).

## G. Strip Search Incident

Cottrell alleges that after he filed this lawsuit, he was housed in segregation and subjected to strip searches. Cottrell asserts that Correctional Officers Brown, Phillips, Trent, and Bortz required that he submit to these strip searches while in segregation in retaliation for filing his lawsuit and for the purposes of harassment.

Specifically, Cottrell alleges that on January, 1, 2011, Officer Brown strip searched Cottrell in his cell in the presence of Officer Phillips, a female correctional officer. Cottrell further asserts that Officers Trent and Bortz denied him recreation time for refusing to comply with a strip search. Cottrell maintains that he refused to comply with the strip searches because the procedures being used were "illegal." Cottrell also alleges that these searches were for the sole purpose of harassment.

Officer Phillips denies witnessing a strip search of Cottrell or any other male inmate while at ROSP.[4] Defendants further allege that strip searches are conducted each time an inmate exits his cell, and inmates are not allowed to leave their cells without being strip searched. Cottrell alleges that the strip searches violate his Fourth Amendment rights, and deprive him of

---

[4] Cottrell alleges that the strip searches included body cavity searches. However, Cottrell's factual description of the strip searches to which he was subjected mirrors the definition of a visual strip search. Further, Officers Brown, Trent, and Bortz deny ever performing a body cavity search on Cottrell.

Case 7:10-cv-00505-SGW-RSB   Document 85   Filed 02/17/12   Page 11 of 32   Pageid#: 812

procedural due process. Cottrell also requests injunctive relief from all strip searches. (Am. Compl.)

### III.    Standard of Review

Summary judgment is proper where, viewing the facts in the light most favorable to the plaintiff, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating the absence of any material issue of fact, but need not support its motion with affidavits or other materials negating the nonmoving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party may not rely upon mere allegations or denials contained in its pleadings, but must come forward with some form of evidentiary material allowed by Rule 56 demonstrating the existence of a genuine issue of material fact requiring a trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Celotex , 477 U.S. at 324. A genuine issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the nonmoving party. Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009).

The question of whether sovereign or qualified immunity applies turns in part on whether a defendant is being sued in his official or individual capacity. A plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983. Biggs v. Meadows, 66 F.3d 56, 60 (4th Cir. 1995). When a § 1983 plaintiff does not indicate a specific capacity, as is the case here, a court must examine the nature of the plaintiff's claims, the relief sought, and the course of the proceedings to determine whether a particular state official is being sued in his individual or official capacity. Id. In determining the capacity

12

in which the defendants are being sued, the court should consider the following factors: 1) the plaintiff's failure to allege that the defendant acted in accordance with governmental policy or custom, 2) the plaintiff's request for compensatory or punitive damages (since such relief is unavailable against officials in their official capacity), and 3) the nature of the defenses raised in response to the complaint. Id. While Cottrell alleges that the defendants acted in accordance with governmental policy or custom in some of his claims, he fails to do so in others. Additionally, Cottrell requests both compensatory and punitive damages, as well as injunctive relief. Accordingly, the court finds that Cottrell intended to sue the defendants in both their individual and official capacities.

## IV.    ANALYSIS

### A.  Procedural Due Process Claims

Cottrell asserts claims for a denial of procedural due process during the following incidents: Recreational Yard Incident, Administrative Review of Classification Incident, Recreation Denial and Threat Incident, Failed Copying Attempt Incident, Segregation and Loss of Property Incident, Grievance Mishandling Incident and Strip Search Incident. Each incident is addressed separately below.

An inmate must demonstrate that he was deprived of a life, liberty, or property interest by government action to succeed on a claim of a violation of substantive or procedural due process under the Fourteenth Amendment. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). The liberty interest of an inmate is limited to avoiding a deprivation that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472. 484 (1995). To succeed on a procedural due process claim, Cottrell must

13

show that "the procedures attendant upon that deprivation were constitutionally deficient." Barefoot v. City of Wilmington, 306 F.3d 113, 124 (4th Cir. 2002)(citation omitted).

In disciplinary proceedings, inmates do not enjoy the same due process rights as a criminal defendant; rather, those rights are limited to reflect the inmate's incarcerated status. Wolff v. McDonnell, 418 U.S. 539, 556. A disciplinary proceeding satisfies procedural due process if an inmate is provided with "advance written notice of the claimed [disciplinary] violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary actions taken." Id. at 563; accord Brown v. Braxton, 373 F.3d 501, 504 (4th Cir. 2004). An inmate may only present evidence and call witnesses during a disciplinary hearing when institutional safety and correctional goals will not be compromised. Wolff, 418 U.S. at 566.

To comply with the minimum requirements of procedural due process, the hearing officer's decision must be supported by some evidence in the record. Superintendent, Mass. Corr. Inst., Walpole v. v. Hill, 472 U.S. 445, 454 (1985). A court is not required to examine the entire record, make an independent assessment of witness credibility or even weigh the evidence. Id. at 455. Rather, a court must look for "any evidence in the record that could support the conclusion reached by the disciplinary board. Id. at 455-56. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Id. That is, the court will not look behind the disciplinary process if the institution afforded the inmate adequate due process and the decision has some basis in fact.

Due process is satisfied if evidence exists to support the charge and a reasonable decision maker could have found a disciplinary violation. See Henderson v. United States Parole

Case 7:10-cv-00505-SGW-RSB   Document 85   Filed 02/17/12   Page 14 of 32   Pageid#: 815

Comm'n, 13 F.3d 1073, 1077 (7th Cir. 1994). Improperly responding to a grievance, alone, is insufficient to create liability under § 1983 for the original deprivation. See, e.g., Brooks v. Beard, 167 F. App'x 923, 925 (3rd Cir. 2006) (finding that allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the alleged underlying deprivation).

### 1. Recreational Yard Incident

#### a. Disciplinary Charge

As a result of the Recreational Yard Incident, Cottrell faced a disciplinary hearing for alleged threats made to Officer Rose in the chow hall. Cottrell claims that Defendants Rose, Artrip, Counts, Fleming, Ray and Jabe violated his constitutional rights by issuing a false disciplinary charge (Compl., Claim 1), not adequately investigating the charge (Compl., Claim 2), not affording him a fair hearing and convicting him of the charge (Compl., Claim 3), approving the conviction (Compl., Claim 4), upholding the decision on appeal (Compl., Claim 5), and not responding to further appeal of the conviction (Compl., Claim 6).

The disciplinary process and findings related to the Recreational Yard Incident and subsequent disciplinary charge for threatening Rose satisfies due process. The disciplinary finding need only be supported by some evidence in the record. Officer Counts relied on Rose's statement, and the evidence in the record when finding Cottrell guilty of threatening bodily harm. The court will not make an independent assessment of Cottrell's guilt when such evidence is present. Hill, 472 at 454.

Moreover, the disciplinary process satisfies due process, because Cottrell received advanced written notice of the charges he faced and possible penalties. Cottrell had an opportunity to request a staff advisor to appear at the hearing with him, to call relevant witnesses,

15

and to present documentary evidence.  Officer Artrip reviewed the disciplinary reports and affirmed Counts's findings.  Both Counts and Warden Ray reviewed the disciplinary decision. Warden Ray's decision is supported by evidence in the record.  Accordingly, the undersigned recommends that the defendants' Motions for Summary Judgment be granted as to Cottrell's due process claims in Claim Nos. 1-6 of the Complaint.

### b.  Security Breach Grievance

With regard to Cottrell's grievance arising from the Recreational Yard Incident, Cottrell alleges that Warden Ray did not adequately investigate the grievance (Compl., Claim 9), that Garman upheld Ray's decision (Compl., Claim 10), that Deputy Director Jabe did not respond to Cottrell's grievance (Compl., Claim 11), and that Adams failed to investigate video footage of the incident (Compl., Claim 15).[5]  Cottrell alleges no additional facts to support these allegations in the Complaint.  Given the legal standards set forth above, the court finds that the procedures related to Cottrell's grievance arising from the Recreational Yard Incident satisfy due process.

Cottrell filed an informal and regular grievance, both of which were responded to in a timely manner.  Lieutenant Fleming's decision to deny Cottrell's grievance is supported by statements from Rose and Captain McCoy.  On appeal, Warden Ray upheld Fleming's decision, citing VDOC Security Procedures, which allow officials to handcuff prisoners during an escort.

Additionally, with regard to Cottrell's allegations that Deputy Director Jabe did not respond to his grievance, operating procedures do not allow for an appeal of this type of grievance to Jabe.  Finally, there is no evidence to support Cottrell's claim that Officer Adams failed to investigate the video footage.  Adams responded to Cottrell's informal complaint after

---

[5] Cottrell also alleges that these claims constitute a violation of his First and Eighth Amendment rights, which are discussed below.

16

reviewing the video footage and stated that the cameras did not face Cottrell at the time of his escort.

There is evidence to support defendants' decisions to deny Cottrell's grievances and informal complaints arising from the Recreational Yard Incident. Accordingly, the undersigned recommends that defendant's Motions for Summary Judgment be granted as to the due process claims stated in Claims Nos. 9-11 and 15.

### 2. Administrative Review of Classification Claims

Cottrell contends that defendants Reynolds and S. Mullins violated his constitutional rights during the Administrative Review of Classification Incident by increasing his GCA level and depriving him of his good time credits without due process (Compl., Claim 7), and for participating in an ICA hearing at which his GCA level was increased (Compl., Claim 8).

Generally, prison administrators have broad discretion to oversee prisons, and inmates have a limited number of protected liberty interests. Hewitt v. Helms, 459 U.S. 460, 467 (1983). "The due process clause does not create a liberty interest [for an inmate] in earning a certain number of good time credits." Slezak v. Evatt, 21 F. 3d 590, 594 (4th Cir. 1994)(citing Hewitt, 459 U.S. at 468 (1983)). Rather, an inmate has a liberty interest to the extent it is created by a specific state law or regulation requiring procedural safeguards and specific substantive limits on discretion. Ewell v. Murray, 813 F. Supp. 1180, 1182 (W.D. Va. 1993). Virginia Code sections 53.1-198-202 establish the GCA system by which prisoners earn good time credits, but gives prison officials absolute discretion over GCA classifications. DeBlasio v. Johnson, 128 F. Supp. 2d 315 (E.D. Va. 2000). "Thus Virginia has not created a statutory or regulatory interest in a particular GCA classification." Id.

Case 7:10-cv-00505-SGW-RSB   Document 85   Filed 02/17/12   Page 17 of 32   Pageid#: 818

Prison Officials at ROSP have broad discretion to "determine whether an inmate's conduct and adjustment warrant placement in a particular GCA [or ESC] class" so long as they award or remove credits pursuant § 53.1-200. Ewell, 813 F. Supp. at 1183. Virginia Code § 53.1-200 states:

> Rules and regulations approved by the Board shall govern the earning of good conduct allowance. The amount of good conduct allowance to be credited to those persons eligible therefore shall be based upon compliance with written prison rules or regulations; a demonstration of responsibility in the performance of assignments; and a demonstration of a desire for self-improvement.

Defendants ordered an ICA hearing pursuant to VDOC Operating Procedures ("OP") 830.1, a regulation approved by the Board, in order to review Cottrell's administrative classification. Prison officials appropriately relied on the underlying disciplinary report and action. Cottrell proffered no evidence to suggest that it was improper to review his administrative classification, other than to make conclusory allegations pertaining to Reynolds' and S. Mullins' purported knowledge about the disciplinary hearing.

"Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due." Ewell, 813 F. Supp. at 1183. Federal due process requires "an informal, nonadversarial review, including the inmate's statement, within a reasonable time after the fact." Hewitt, 459 U.S. at 472. The administration is required to provide notice to the inmate and an opportunity to present his views, either orally or in writing. Id. at 476.

Reynolds updated Cottrell's classification only after Officer Counts concluded the disciplinary hearing, and prison officials completed a full review of Cottrell's prison record. Cottrell was afforded a formal ICA hearing under VDOC OP 830.1, where he was allowed to be present at the hearing, remain silent, know the reasons for an ICA decision, have a staff advisor,

Case 7:10-cv-00505-SGW-RSB   Document 85   Filed 02/17/12   Page 18 of 32   Pageid#: 819

and receive a copy of the written findings and recommendations. Cottrell received due process regarding the classification of his GCA status. Therefore, the undersigned recommends that defendants' Motions for Summary Judgment be granted as to Claim Nos. 7 and 8.

### 3. Segregation and Loss of Property Claims

Cottrell alleges that Property Officer Vanover illegally confiscated property on April 29, 2010 and May 17, 2010 (Compl., Claim 16(1)) in violation of operational procedures and state law. A confiscation amounts to a constitutional violation when the state's procedural protections are insufficient to ensure that deprivations pursuant to the policy are lawful. Zinermon v. Burch, 494 U.S. 113, 126 (1990). "When the deprivation is made pursuant to some official policy, the inmate must be afforded some combination of pre-deprivation notice and a chance to be heard." Id.

According to DOP 802.1, "[a] facility may seize, and should retain custody of, the property until a determination regarding confiscation has been made[,]" and"[t]he offender should be given notification of the confiscation and the right to appeal before the property is permanently confiscated." VDOC's policy provides pre-deprivation notice and an opportunity to challenge the confiscation. It is therefore sufficient to satisfy plaintiff's due process right in this case. See Lacey v. Braxton, 2011 WL 3320801 (Aug. 1, 2011).

To the extent that Cottrell argues that the officers did not follow VDOC policy when confiscating his property, his claim does not rise to the level of a constitutional violation. A failure to abide by state procedural laws or regulations does not establish a violation of federal due process under § 1983. United States v. Caceres, 440 U.S. 741, 752-755 (1978); Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990). Moreover, even the intentional or negligent deprivation of personal property by a prison employee acting outside the scope of

19

official policy or custom does not rise to the level of a constitutional violation so long as the state provides an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981). There are no facts to support a claim that defendants intentionally or negligently deprived Cottrell of property outside the scope of official policy or custom. Thus, the undersigned recommends that the defendant's Motions for Summary Judgment be granted as to Claim 16(1).

### 4. Grievance Mishandling Claims

The Grievance Mishandling Claims arise out of Cottrell's allegation that Grievance Coordinators R. Mullins, Crowder-Austin, and Taylor, as well as Operation Officer Shortridge, violated his constitutional rights by improperly denying his grievances, deliberately misplacing his grievances, or both. Cottrell offers no evidence that his grievances were deliberately misplaced. R. Mullins states in his affidavit that each of the twenty-nine informal complaints or grievances filed by Cottrell were either properly rejected as not grievable or properly denied. (Dkt. No. 40-8, No. 40-9, No. 40-10, No. 40-11, No. 40-12).

Cottrell was afforded due process under the prison's grievance procedure. Cottrell availed himself of the grievance procedure, was given notice of the proceedings and findings of fact, and had the opportunity to appeal the decisions through the appropriate paths. Additionally, the court will not reexamine a hearing officer's decision if it was supported by some evidence, as were the decisions in this case. Hill, 472 U.S. at 454. Accordingly, the undersigned recommends that defendants' Motions for Summary Judgment be granted on Claim Nos. 17-24.

### B. § 1983 Conspiracy Claims

Cottrell asserts that prison officials conspired to violate his constitutional rights in retaliation for filing grievances and "exercising his constitutional rights" in the Recreational

20

Yard Incident, the Recreation Denial and Threats Incident, the Failed Copying Attempt Incident, and the Grievance Mishandling Incident. To establish a civil conspiracy under § 1983, a plaintiff "'must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right.'" Glassman v. Arlington Cnty, Va., 628 F.3d 140, 150 (4th Cir. 2010) (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)). The plaintiff must allege with specificity sufficient facts showing that the defendants shared a "unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement" to violate the plaintiff's rights. Am. Tobacco Co. v. United States, 328 U.S. 781, 809 (1946). Cottrell alleges no specific facts showing a meeting of the minds between any defendants to violate his constitutional rights. "Conclusory allegations of a conspiracy are insufficient." Murphy v. Goff, 2010 WL 2292130, *4 at n.4 (W.D. Va. June 7, 2010).

Cottrell has set forth no specific facts beyond his conclusory allegations that any prison official acted collectively with the purpose of depriving Cottrell of his constitutional rights. Rather, the facts suggest that the defendants afforded Cottrell due process in all his grievances. Accordingly, the undersigned recommends that defendants' Motions for Summary Judgment be granted as to Claim Nos. 11, 15, and 17-25.

## C. § 1983 Retaliation Claims

Cottrell alleges that Officer Rose filed a false charge against him in retaliation for filing a grievance (Compl., Claim 1), that Officers Kiser and Collins denied him recreation time in retaliation for filing grievances (Compl., Claims 12 and 13), and that Operations Coordinator Shortridge, Grievance Coordinator Taylor, Institutional Ombudsman Nixon and Regional

Case 7:10-cv-00505-SGW-RSB   Document 85   Filed 02/17/12   Page 21 of 32   Pageid#: 822

Ombudsman Crowder-Austin systematically mishandled and denied Cottrell's grievances in retaliation for Cottrell filing grievances (Compl., Claims 20 and 22-24).

An action taken in retaliation against an inmate for the exercise of a constitutionally protected right states a § 1983 claim. Garrett v. Angelone, 940 F.Supp. 933, 944 (W.D.Va. 1996) (citing American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 786 (4th Cir. 1993)); Hudspeth v. Figgins, 584 F.2d 1345 (4th Cir.1978);  Russell v. Oliver, 552 F.2d 115 (4th Cir. 1977).  To state a retaliation claim, the "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adam v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).  Plaintiff must allege sufficient facts suggesting a retaliatory motive for defendants' actions.  White v. White, 886 F. 2d 721, 724 (4th Cir. 1989).  Finally, bare assertions of retaliation are not sufficient to state a retaliation claim under § 1983.

Cottrell's claims fail because the defendants' actions were not in response to Cottrell's exercise of a constitutional right and are supported by a legitimate non-retaliatory reasons. Specifically, Cottrell fails to allege facts sufficient to suggest that the disciplinary charge, denial of recreation time, and alleged mishandling and denial of grievances violated the First Amendment.  There is no constitutional right to participate in grievance proceedings. Adams, 40 F.3d at 75 (stating that the Constitution does not create an entitlement to grievance procedures or access to any such procedure voluntarily established by a state).  Defendants' submissions show that they acted with legitimate, non-retaliatory reasons regarding each of Cottrell's claims. Finally, the record indicates that Shortridge, Taylor, Nixon, and Crowder-Austin handled Cottrell's grievances in a timely manner and afforded him notice and due process when required.

Case 7:10-cv-00505-SGW-RSB   Document 85   Filed 02/17/12   Page 22 of 32   Pageid#: 823

Accordingly, the undersigned recommends that defendants' Motions for Summary Judgment be granted as to Cottrell's retaliation claims contained in Claim Nos. 1, 12, 13, 20, 22, 23, 24.

### D.  Denial of Access to Court: First Amendment and Due Process Claims

Cottrell claims that S. Mullins denied him access to the courts by refusing to make copies and denying him access to the law library (Compl., Claim 14).  Cottrell also claims that Deputy Director Jabe, who failed to respond to his Failed Copying Attempt as well as his Confiscation of Property grievance, denied him access to the courts. (Compl., Claim 25).

The Supreme Court has recognized a prisoner's right to access the courts in both the First Amendment and the Due Process Clause of the Fourteenth Amendment.  See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.");  see also Wolff v. McDonnell, 418 U.S. 539, 579 (1974) ("The right of access to the courts ... is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.").  Prisons must give inmates access to law libraries or direct legal assistance to ensure "adequate effective, and meaningful" access to the courts.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  S. Mullins's affidavit and supporting documentation indicates that law library requests were responded to in a timely manner.

"Inmates do not have unlimited rights to photocopies or photocopying machines." Scott v. Kelly, 107 F. Supp. 2d 706, 709 (E.D. Va. 2000) (citing Lyons v. Clark, 694 F. Supp. 184, 188 (E.D. Va. 1988).  Therefore, the prisoner must show that the denial of photocopies effectively impeded his access to the courts, and not that the denial was merely unreasonable.  Id.

Cottrell provides no facts that the denial of copies or the delay in accessing law library materials effectively impeded his access to the courts or obstructed his ability to file suit. Cottrell claims that his law library material requests were delayed, which impeded his ability to effectively represent himself before the court. The Supreme Court has specifically disclaimed any notion that the right of access requires the State to "enable the prisoner to discover grievances, and to litigate effectively once in court." Lewis v. Casey, 518 U.S. 343, 355 (1996); see e.g., Girrantano v. Johnson, 456 F. Supp. 2d 747 (W.D. Va. 2006). Moreover, S. Mullins's affidavit indicates that prison photocopying procedures require that prisoners must either have money in their account to pay for copies or the court must order the prison to produce copies. The denial of photocopies was neither unreasonable nor did it deny Cottrell access to the courts. Accordingly, the undersigned recommends that defendants' Motions for Summary Judgment be granted as to Claim No. 14.

Finally, Cottrell alleges that Deputy Director Jabe denied him access to the courts by failing to respond to his grievances. The affidavits of R. Mullins and S. Mullins indicate that for both grievances, a Level II appeal to Garman was the last level of appeal. Cottrell had no right to appeal to Jabe concerning these grievances. Moreover, Cottrell fails to allege how these refusals have impeded his efforts to pursue his claim. Indeed, Cottrell was afforded due process in his Failed Copying Attempt grievance as well as his Confiscation of Property grievance. Cottrell received copies of all decisions and notifications in a timely manner, allowing him to develop a full and complete record for his suit. Accordingly, the undersigned recommends that defendants' Motions for Summary Judgment be granted as to Claim No. 25.

### E.  Fourth Amendment Claims

Cottrell alleges that officers Brown, Phillips, Trent, and Bortz performed strip searches, thereby violating his Fourth Amendment rights (Am. Compl.).  The Fourth Amendment guards against unreasonable searches and seizures. U.S. Const. amend. IV.  While the Fourth Amendment applies to lawfully confined prisoners, inmates have much more limited privacy interests than those not incarcerated.  Bell v. Wolfish, 441 U.S. 520, 545–46 (1979); Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981).  A prison regulation that encroaches on an inmate's Fourth Amendment right "is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 85 (1987). See also Bell, 441 U.S. at 545–46.  The court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  Bell, 441 U.S. at 559 (citations omitted).  Moreover, under § 1983 analysis, a federal court should defer to prison officials' expertise when determining whether a particular policy violates any constitutional provision. Id.;  Block v. Rutherford, 468 U.S. 576 (1984).

Cottrell alleges that correctional officers Brown, Phillips, Trent, and Bortz violated his Fourth Amendment rights by requiring him to submit to strip searches in retaliation for filing his lawsuit and for the purposes of harassment.  A visual strip search when a prisoner enters or leaves a cell serves a legitimate penological purpose if a prisoner has the opportunity to obtain contraband or weapons while outside of his cell.  Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988). See also, Rickman v. Avaniti, 854 F.2d 327 (9th Cir. 1988) (approving of strip searches conducted each time a prisoner in administrative segregation left his cell).  ROSP's OP requires that prisoners be strip searched every time they enter and leave the cell.  In his affidavit, Deputy Director Jabe states that the strip search policy is designed to promote the safety and

security of inmates and institutional staff by preventing inmates deemed dangerous enough to warrant segregation from smuggling contraband into and out of their cells. The undersigned finds that ROSP's strip search policy serves a legitimate penological interest.

Cottrell also claims that Phillips, a female correctional officer, witnessed a strip search of Cottrell performed by Officer Brown. Phillips denies witnessing Cottrell's strip search. However, even if Phillips had witnessed the strip search, it would not be a constitutional violation. ROSP's operating procedure must serve a legitimate penological interest in order for it to be a valid impingement on an inmate's constitutional rights.[6] ROSP's operating procedure allows females to be present at a cell during a strip search, but do not allow them to observe, watch, or supervise the search. ROSP's policy of allowing female officers to be present at strip searches serves a valid penological interest in hiring women guards and placing those guards efficiently throughout the facility. Riddick v. Sutton, 794 F. Supp. 169, 171–72 (E.D.N.C. 1992) (stating that prisons have both a "security interest in placing staff members most efficiently within the facility" and a "valid interest in hiring women for positions as guards"). Female guards' participation in strip searches of male inmates is limited, and females are allowed to participate only in extreme emergencies.

Cottrell does not claim that Phillips actively participated or directed the strip searches; rather, he merely alleges she was present (with two rookie officers) at the time his strip search took place. He does not allege that she acted in any way inappropriate or with anything other than a professional demeanor. Cottrell only alleges that Phillips observed a strip search on one occasion. Any observation of Cottrell nude or partially nude by Phillips is at most merely

---

[6] Turner established four relevant factors to this determination: (1) whether a valid rational connection exists between the prison regulation and the legitimate governmental interest offered to justify it; (2) whether alternative means of exercising the right exist that remain open to inmates; (3) the likely impact that accommodation of the alleged constitutional right would have on the guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives. Id. at 89–90.

26

incidental.  Given the clear rational relationship between the practice of mandatory strip searches for inmates in segregation and the dual goals of maintaining prison security and equal employment hiring, Cottrell has failed to establish a cognizable constitutional violation by Phillips or prison administration.  Accordingly, the undersigned recommends that defendant's Motions for Summary Judgment be granted as to Cottrell's Fourth Amendment Claims in the Amended Complaint.

### F.  Eighth Amendment Claims

Cottrell alleges that Officer Rose and Officer Kiser violated his Eighth Amendment rights in the Recreational Yard Incident and the Recreation Denial and Threat Incident by failing to properly protect him while escorting him across the prison recreation yard, generally failing to have proper escort procedures in place, threatening him with physical violence, and a denying his recreation time (Am. Compl.).

The Eighth Amendment guarantees inmates the right to be free from the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  The Eighth Amendment requires prison officials "to protect prisoners from violence at the hands of other prisoners."  Weatherholt v. Bradley, 316 F. App'x 300, 301 (4th Cir. 2009) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  A claim against prison officials for failure to protect an inmate from violence requires a showing (1) "that [the inmate] is incarcerated under conditions posing a substantial risk of serious harm," and (2) that the prison officials had a "sufficiently culpable state of mind," Farmer, 511 U.S. at 83.  That is, the test contains both an objective and a subjective prong.  The required state of mind for the prison officials is one of "deliberate indifference to inmate health or safety." Id.  (quotations and internal citations omitted).

## 1. Security Breach Grievance

Cottrell alleges that correctional officers C. Dockery and T. Phipps (neither Dockery nor Phipps are named defendants) violated his Eighth Amendment right by escorting him across the recreation yard in handcuffs while other inmates were out for recreation. (Compl., Claim 1). The facts alleged by Cottrell do not demonstrate that he suffered a "substantial risk of serious harm." Cottrell does not allege that either Dockery or Phipps left his side as he walked across the yard. Cottrell further notes that Officer Rose was manning a nearby gun post. Cottrell fails to give any reason why he was at risk of attack from another inmate while he was flanked by correctional officers and in full view of a gun post.

Additionally, Cottrell alleges that Regional Director Garman failed to implement proper procedures for escorting inmates across the recreational yard. Cottrell does not provide any facts that indicate that the current escort procedures place inmates in danger, or that Garman had notice of such allegedly insufficient procedures. Accordingly, the undersigned recommends that defendants' Motions for Summary Judgment be granted as to Claim 1 of the Complaint.

## 2. Recreation Denial and Threats Incident

In the Recreation Denial and Threat Incident, Cottrell claims that defendants Kiser and Collins violated his constitutional rights by threatening, intimidating, and harassing him, and denying him recreational time (Compl., Claim 12). Cottrell also claims that Collins, Kiser's supervisor, allowed Kiser to work near Cottrell during the pendency of the harassment investigation, and condoned Kiser's behavior toward Cottrell. (Compl., Claim 13).

Inmates have no constitutionally protected liberty interest in preventing certain prison guards from working where a particular inmate is incarcerated. The constitution prevents the imposition of "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." See Sandin v. Conner, 515 U.S. 472, 484 (1995). "The ultimate determination of whether the conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination." Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997). Daily interaction between correctional officers and inmates is a typical and commonplace occurrence in prison life. The facts alleged do not show that Kiser or Collins imposed a "significant hardship" on Cottrell in retaliation for filing a grievance. The facts merely allege that Kiser continued to work near Cottrell during the pendency of the grievance investigation. To require guards to be reassigned during the pendency of a grievance investigation would subvert the state's legitimate penological interests in maintaining order within a prison.

With regard to Cottrell's allegations of threats and harassment, Cottrell alleges that Kiser threatened to throw Cottrell down a flight of stairs and poison his food. As a general rule, verbal abuse of inmates by guards, without more, does not state a constitutional claim recognizable under § 1983. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979), cited favorably in, Moody v. Grove, No. 89-6650, 1989 WL 107004 (4th Cir. Sept. 19, 1989) (unpublished). Mere "threatening language and gestures of [a] penal officer do not, even if true, constitute constitutional violations." Fisher v. Woodson, 373 F.Supp. 970, 973 (E.D. Va. 1973). Cottrell has not alleged that Kiser's threats were anything more than mere threatening language.

Cottrell also alleges that Kiser denied him recreation time. Generally, the denial of "all meaningful opportunities to exercise" over an extended period of time violates the Eighth Amendment, absent exceptional circumstances. Mitchell v. Rice, 954 F.2d 187, 192-3 (4th Cir. 1992) (seven months without out-of-cell exercise violated constitutional standards.); Gholson v. Murry, 953 F. Supp. 709 (E.D.Va. 1997.) The denial of out-of-cell exercise opportunities is not per se unconstitutional, but courts have "generally established the constitutional necessity for

some out-of-cell exercise," notwithstanding penological considerations that may justify restrictions. Id.

Cottrell does not allege a denial of all opportunities to exercise. Rather, he alleges that he was denied recreation on "several occasions." Cottrell's own statements indicate that he was denied recreation time only on occasion, and thus was "permitted some regular out-of-cell exercise." This does not rise to the level of a constitutional violation. Accordingly, the undersigned recommends that defendants' Motions for Summary Judgment be granted as to Claims Nos. 12 and 13.

### G.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity for each claim. When examining the issue of qualified immunity, a court must 1) identify whether a specific right was violated and 2) determine whether, at the time of the alleged violation, the right was so clearly established that a reasonable person in the official's position would have recognized the illegality of his actions. See Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). To support a denial of qualified immunity, a court need not point to an already litigated case involving the same or very similar facts. See Hope v. Pelzer, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.") Rather, the question for the court is whether the contours of the right have been fleshed out to a degree capable of giving an officer fair warning that the action he was preparing to take would violate the constitutional rights of the plaintiff. See Id. When gauging the awareness of an official, a court should look to the decisions of the United States Supreme Court, the relevant United States Court of Appeals, and the highest state court of the state in which the court sits. Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998).

Case 7:10-cv-00505-SGW-RSB   Document 85   Filed 02/17/12   Page 30 of 32   Pageid#: 831

The court has determined that Cottrell failed to establish that defendants violated any of his rights. Absent the identification of a specific right violated, the court need not address the second prong of a qualified immunity analysis.

## H. Requests for Injunctive Relief

In addition to damages, Cottrell also requests injunctive relief. Unlike a claim for damages, sovereign immunity does not shield defendants from such claims. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989); see also Ex Parte Young, 209 U.S. 123, 159–60 (1908). A plaintiff seeking injunctive relief must show that: (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of . . . relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." Winter v. Nat'l. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted).

Cottrell requests injunctive relief requiring the implementation of "a policy and procedure for conducting proper escort techniques" arising from the Recreational Yard Incident. Cottrell does not allege that he suffered any injury as he was escorted across the recreation yard in handcuffs. Cottrell also does not show that he is likely to suffer irreparable harm in the absence of a change in prison procedures. Further, the strong presumption in favor of giving prison officials discretion in the administration of prisons counsels against granting injunctive relief to Cottrell on this claim.

Cottrell also requests that the court transfer him to another facility, and permanently enjoin the defendants from use of "the illegal strip search procedures." Given the undersigned's findings set forth above, Cottrell cannot show that he is likely to succeed on the merits of his claims. Additionally, Cottrell alleges no specific facts showing that he would suffer irreparable harm if his request for a transfer is not granted, or if defendants are not permanently enjoined

Case 7:10-cv-00505-SGW-RSB   Document 85   Filed 02/17/12   Page 31 of 32   Pageid#: 832

from conducting strip searches.  Accordingly, the undersigned recommends that each of Cottrell's requests for injunctive relief be denied.

## V.    CONCLUSION

Based on the foregoing, the undersigned finds that Cottrell's allegations do not establish a constitutional violation.  Accordingly, the undersigned **RECOMMENDS** that the defendants' Motions for Summary Judgment (Dkt. Nos. 39, 51, and 66) be **GRANTED,** Cottrell's request for injunctive relief be **DENIED**, and this action be **DISMISSED**.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge.  Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send copies of this Report and Recommendation to plaintiff and counsel of record for defendants.

Entered: February 17, 2012

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge

32